**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

KENNETH JACKSON,

              Petitioner,

vs.                               Case No.:    3:15-cv-75-MMH-JBT
                                                     3:13-cr-77-MMH-JBT

UNITED STATES OF AMERICA,

              Respondent.

_____/

## ORDER

This case is before the Court on Petitioner Kenneth Jackson's <u>pro</u> <u>se</u> Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1; § 2255 Motion) and supporting memorandum (Civ. Doc. 2; Memorandum).[1] In the § 2255 Motion, Jackson raises two claims: (1) that counsel gave ineffective assistance by allowing Jackson to stipulate to his guilt, and (2) that counsel gave ineffective assistance by failing to argue that Jackson's two prior convictions for the sale or delivery of cocaine within 1,000 feet of a school did not meet the Armed Career Criminal Act's (ACCA's) definition of a serious drug offense.[2] The United States

---

[1]     Citations to the record in the underlying criminal case, <u>United States vs. Kenneth Jackson</u>, No. 3:13-cr-77-MMH-JBT, will be denoted "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:15-cv-75-MMH-JBT, will be denoted "Civ. Doc. __."

[2]     Under the ACCA, a defendant convicted of being a felon in possession of a firearm is subject to an enhanced sentence of 15 years to life in prison if he has three or more prior convictions for a "violent felony" or a "serious drug offense," or both, committed on different occasions from one another. 18 U.S.C. § 924(e)(1).

1

responds that the record refutes these claims. (Civ. Doc. 6; Response to § 2255 Motion). Jackson has replied. (Civ. Doc. 7; Reply).[3]

On June 23, 2016, Jackson filed a counseled motion for leave to supplement, in which he raised a claim that his ACCA sentence is unlawful based on the United States Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015).[4] (Civ. Doc. 13; First Motion to Supplement, Civ. Doc. 14; Order Granting First Motion to Supplement). Specifically, Jackson argued that his prior Florida conviction for felony battery could have qualified as an ACCA predicate only under the now-void residual clause, such that he no longer had enough convictions to qualify as an armed career criminal. However, Jackson voluntarily dismissed this claim after the Eleventh Circuit Court of Appeals decided United States v. Vail-Bailon, 868 F.3d 1293 (11th Cir. 2017) (en banc) (holding that Florida felony battery categorically qualifies as a violent felony under the ACCA's elements clause), cert. denied, 138 S. Ct. 2620 (2018). (Civ. Doc. 21; Joint Status Report). As such, the Court will not consider this claim further.

Lastly, Jackson filed a second counseled motion for leave to supplement on January 31, 2019. (Civ. Doc. 24; Second Motion to Supplement), (Civ. Doc. 24-1; Proposed § 2255 Supplement). In the Second Motion to Supplement, Jackson seeks to

---

[3]     In the § 2255 Motion and Memorandum, Jackson refers to the United States Sentencing Guidelines' career offender enhancement, although he was actually sentenced under the ACCA. Because Jackson filed the § 2255 Motion pro se, the Court construes the claim as referring to the ACCA enhancement.
[4]     In Johnson, the Supreme Court held that the ACCA's residual clause, which forms part of the definition of a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague. 135 S. Ct. at 2557, 2563.

2

add a claim that trial counsel gave ineffective assistance by failing to argue that his two prior convictions for the sale or delivery of cocaine were not committed on different occasions, and therefore should not have counted as two separate serious drug offenses under the ACCA. The United States concedes that this claim relates back to the original § 2255 Motion. (Civ. Doc. 26; Response to Second Motion to Supplement at 5). But the United States argues, among other things, that the claim should be denied on the merits because Shepard-approved[5] sources establish that the drug offenses were, in fact, committed on different occasions. Id. at 16-18. The Court will grant the Second Motion to Supplement (Civ. Doc. 24) and address the claim on the merits.

Thus, the case has been fully briefed and is ripe for a decision. Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[6], the Court has considered the need for an evidentiary hearing and determines that a hearing is not necessary to resolve the merits of this action. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Patel v. United States, 252 F. App'x 970, 975

---

[5]    Shepard v. United States, 544 U.S. 13 (2005).
[6]    Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

(11th Cir. 2007).[7] For the reasons set forth below, Jackson's § 2255 Motion, as supplemented, is due to be denied.

## I.     Background

On April 17, 2013, a grand jury sitting in the Middle District of Florida returned a two-count indictment against Jackson. (Crim. Doc. 1; Indictment). The grand jury charged Jackson with one count of possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) (Count One), and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Two). Jackson pled not guilty to the charges. (Crim. Doc. 14; Minute Entry of Arraignment).

Jackson then moved to suppress all evidence seized from his residence in Lake City, Florida, including firearms, ammunition, and marijuana. (Crim. Doc. 19; Motion to Suppress). A United States Magistrate Judge conducted an evidentiary hearing (Crim. Doc. 25; Suppression Hr'g Tr.), and recommended that the Court deny the Motion to Suppress (Crim. Doc. 27; Report and Recommendation on Motion to Suppress). Jackson filed objections to the Report and Recommendation (Crim. Doc. 30; Objections), but the Court overruled the Objections, adopted the Report and Recommendation, and denied the Motion to Suppress (Crim. Doc. 32; Order Denying Motion to Suppress).

---

[7]     Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

A month later, now with new counsel, Jackson proceeded to a bench trial based on stipulated facts. (See Crim. Doc. 60, Civ. Doc. 26-3; Bench Trial Tr.). Jackson signed in open court a "Waiver of Right to Jury Trial and Request for Specific Findings of Fact." (Crim. Doc. 44; Jury Trial Waiver). Jackson also signed a stipulation of facts, in which he admitted that he knowingly possessed two firearms after having been convicted of one or more felony offenses, and that he had possessed 129 grams of marijuana inside his home. (Crim. Doc. 45; Stipulation of Facts). The Court reviewed each of the stipulated facts with Jackson, and Jackson acknowledged the government could prove each fact beyond a reasonable doubt if the case proceeded to trial. Bench Trial Tr. at 11-14. Jackson acknowledged that by stipulating to those facts, he was admitting all of the facts necessary for the Court to find him guilty of the charges. Id. at 14-15. After the Court determined that Jackson's stipulation was knowledgeable and voluntary, id. at 15-16, the Court accepted the stipulated facts and adjudicated Jackson guilty of Counts One and Two, id. at 16-20.

According to the final Presentence Investigation Report (PSR), Jackson qualified to be sentenced as an armed career criminal under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4. PSR at ¶ 24. The ACCA enhancement was based on two prior convictions for the sale or delivery of cocaine within 1,000 feet of a school and one prior conviction for felony battery, each in the state of Florida. Id.; see also id. at ¶¶ 36, 39. The Probation Office calculated Jackson's total offense level to be 32, consisting of a base offense level of 34 and a two-level reduction under U.S.S.G. § 3E1.1(a) for acceptance of responsibility. Id. at ¶¶ 25-27. The Probation Office also recommended

the Court find Jackson to fall in Criminal History Category VI, yielding an advisory sentencing range of 210 to 262 months in prison. Id. at ¶¶ 49, 80.

At the sentencing hearing, Jackson did not object to the ACCA enhancement and he voiced no objections to the PSR. (Crim. Doc. 61, Civ. Doc. 26-2; Sentencing Tr. at 3). The Court adopted the Guidelines calculation set forth in the PSR. Id. at 4-5. Both the United States and Jackson suggested that the ACCA's 15-year (180-month) mandatory minimum term of imprisonment would be adequate punishment. Id. at 7-8. The Court adopted the parties' recommendation, varied below the Guidelines range, and sentenced Jackson to the mandatory minimum term of 180 months in prison, consisting of concurrent terms of 60 months as to Count One and 180 months as to Count Two, followed by a two-year term of supervised release. Id. at 9-10; (Crim. Doc. 50; Judgment). Neither party objected to the sentence. Sentencing Tr. at 12.

Jackson filed an appeal, arguing "that the district court erred in denying his motion to suppress the evidence found in his residence by law enforcement officers who were executing an arrest warrant." United States v. Jackson, 575 F. App'x 856, 856 (11th Cir. 2014). The Eleventh Circuit rejected the argument and affirmed Jackson's conviction and sentence. Id. at 857-58. Jackson then filed a petition for a writ of certiorari, which the United States Supreme Court denied. Jackson v. United States, 135 S. Ct. 465 (2014). Less than a year later, Jackson timely filed the instant § 2255 Motion.

## II.     Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

To establish ineffective assistance of counsel, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that counsel's deficient performance sufficiently prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). In determining whether the petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks, 26 F.3d at 1036. The petitioner must show that, in light of all the circumstances, counsel's performance fell outside the "wide range of professionally competent assistance." Id. To satisfy the second

requirement, that counsel's deficient performance was prejudicial, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

**A. Ground One**

Jackson's first claim is that counsel gave ineffective assistance because he failed to object that the Stipulation of Facts violated Jackson's right under the Fifth Amendment to be free from self-incrimination. § 2255 Motion at 4. Jackson admits he agreed to a bench trial, but claims that "prior to the bench trial, Counsel failed to explain to Movant that by signing the Stipulation, he is incriminating himself." Id. Jackson contends he did not consent to stipulating to facts that would establish his guilt, and that counsel should have objected to the facts as self-incriminating. Memorandum at 4-6. Jackson also submitted a brief affidavit, in which he states:

> I, Kenneth Jackson, hereby sworn under penalty of perjury that I request[ed] a bench trial by a judge of this Court. And, Attorney Lisa Call, nor Attorney Shawn A. Arnold did not advise me that I am

incriminating myself of the charged crimes before I signed the Stipulation and appeared before the Honorable Judge for his Bench Trial.

(sic) (Civ. Doc. 3; Affidavit).

The record in this action conclusively refutes Jackson's allegations. The record shows that Jackson waived his jury trial rights and stipulated to facts that he acknowledged, under oath in open court, would be sufficient to establish his guilt. Jackson also told the Court that he had read the Stipulation of Facts, discussed them with his attorney, and that he voluntarily accepted the stipulations. As explained below, this was a voluntary, strategic decision on Jackson's part.

During the stipulated-facts bench trial, Jackson executed a Jury Trial Waiver (Crim. Doc. 44) in open court. The first page of the waiver states:

### WAIVER OF RIGHT TO TRIAL BY JURY AND REQUEST FOR SPECIFIC FINDINGS OF FACT

I, KENNETH JACKSON, pursuant to Rule 23, Federal Rules of Criminal Procedure, hereby waive my right to a trial by a jury and request that a United States District Judge make specific findings of fact as to my guilt or innocence based on the Stipulation of Facts provided to the Court. I understand that I have an absolute right to a trial before a jury. I also understand that by this waiver I will forever waive and give up that right to a jury trial in this case. I am executing this waiver with full knowledge of my rights and have consulted with my attorney, Shawn Arnold, regarding my rights. I have not been pressured, threatened, or coerced into executing this waiver and do so freely and voluntarily.

Id. at 1. The second page of the waiver contains the signatures of Jackson, his counsel, the prosecutor, and the undersigned. Id. at 2.

In addition to executing the Jury Trial Waiver, prior to the hearing, Jackson also executed the Stipulation of Facts (Crim. Doc. 45). In doing so, Jackson stipulated that he knowingly possessed two firearms – a Ruger 9 mm pistol and a Menz 7.65 mm

pistol – after having been convicted of one or more felony offenses, and that he possessed 129 grams of marijuana inside his home. Id. at 1-2. The last page of the Stipulation of Facts states:

> The defendant acknowledges that by this stipulation he is agreeing to all the facts set forth above and that he is further agreeing that the elements required to establish that he is factually guilty of the offenses charged in Counts One and Two of the Indictment pending before him are established. The defendant also acknowledges that this stipulation will be used against the defendant at trial or at any subsequent proceeding.

Respectfully submitted,

KENNETH JACKSON
Defendant

FRANK TALBOT
Assistant United States Attorney

SHAWN ARNOLD, Esq.
Attorney for KENNETH JACKSON

Dated: August 20 , 2013

Id. at 3.

Before accepting the Jury Trial Waiver, the Court advised Jackson of the rights associated with a jury trial, including the Fifth Amendment right to choose whether or not to testify, and advised Jackson that he was waiving those rights by proceeding

10

to a bench trial on the basis of stipulated facts. Bench Trial Tr. at 6-8. Jackson assured the Court that he understood his jury trial rights and waived them knowingly and voluntarily. Id. at 8-10. The Court then reviewed each of the stipulated facts with Jackson, and Jackson acknowledged that the government could prove each fact beyond a reasonable doubt if the case proceeded to trial. Id. at 11-14. Notably, Jackson acknowledged that by stipulating to these facts, he was admitting his guilt:

> THE COURT:     Mr. Jackson, do you understand that by admitting each of these facts and allowing the Court to determine your innocence or guilt based upon these stipulated facts that you are admitting all of the elements that would be necessary to establish your guilt as to the offenses charged in Counts One and Two of the Indictment?
>
> DEFENDANT:     Yes, ma'am.
>
> THE COURT:     And I guess basically what I'm saying is do you understand that by admitting all of these, you are admitting that the Court should find you guilty of those two charges?
>
>                Do you understand that?
>
> DEFENDANT:     Yes, ma'am.

Id. at 14-15. Jackson assured the Court that he had been given ample time to discuss the Stipulation of Facts with his attorney, and that his decision was knowledgeable and voluntary:

> THE COURT:     Have you had enough time to speak with your lawyer about each of these stipulations, sir?
>
> DEFENDANT:     Yes, ma'am.
>
> THE COURT:     Is it your own decision to agree to each paragraph set forth in the stipulation?

DEFENDANT:      Yes, ma'am.

THE COURT:      Do you understand all of the rights that you have and that you waive and give up by making these stipulations?

DEFENDANT:      Yes, ma'am.

THE COURT:      Have you told the truth today, sir?

DEFENDANT:      Yes, ma'am.

THE COURT:      Did anybody tell you to answer my questions in a particular way?

DEFENDANT:      No, ma'am.

THE COURT:      Have any threats or promises been made to you?

DEFENDANT:      No, ma'am.

THE COURT:      And for the record, counsel filed in open court the stipulation which bears Mr. Talbot's signature and Mr. Arnold's signature.

Mr. Jackson, did you sign this stipulation?

DEFENDANT:      Yes, ma'am.

THE COURT:      And did you read it fully before you signed it?

DEFENDANT:      Yes, ma'am.

THE COURT:      Mr. Arnold, are there any other questions that you believe I need to ask this gentleman before determining whether the facts before the Court are sufficient, pursuant to Rule 23, to support a finding of guilt?

MR. ARNOLD:      No, Your Honor.

THE COURT:      Mr. Talbot?

MR. TALBOT:       No, Your Honor.

Id. at 15-16; see also id. at 9-10. The Court determined that the stipulated facts established each element of the charges in Counts One and Two of the Indictment, and adjudicated Jackson guilty of both counts. Id. at 16-20.

At the end of the stipulated-facts bench trial, the Court asked Jackson whether he had any questions, to which he responded "No, ma'am." Id. at 22. Jackson expressed neither surprise nor objection to the finding of guilt. Likewise, when given the opportunity to speak at his sentencing hearing a few months later, Jackson declined to speak and expressed neither surprise nor objection at having been adjudicated guilty on the basis of stipulated facts. See Sentencing Tr. at 9.

The foregoing record refutes Jackson's allegation that counsel failed to explain to him, before the bench trial, that he would be incriminating himself by signing the Stipulation of Facts. In the written Stipulation which he swore under oath that he read and understood, Jackson stipulated to possessing two firearms after having been convicted of one or more felony offenses, as well as to possessing 129 grams of marijuana inside his home. Stipulation of Facts at 1-2.[8] The last page of the

---

[8]   Although Jackson also stipulated to the existence of several prior felony convictions, including convictions on two counts of selling or delivering a controlled substance within 1,000 feet of a school and a conviction on one count of felony battery, Jackson did not stipulate that he qualified as an armed career criminal. See Stipulation of Facts at 1-2. Thus, to the extent Jackson suggests that counsel gave ineffective assistance by allowing him to stipulate to being an armed career criminal, see Proposed § 2255 Supplement at 2-5, the record refutes this allegation (though the Court did not interpret the original § 2255 Motion and Memorandum as raising this exact claim).

To the extent Jackson suggests that counsel gave ineffective assistance by allowing him to stipulate to the nature or existence of the prior convictions, see id., Jackson offers no sound reason how or why counsel could have contested the nature or existence of the convictions. Indeed, the United States has submitted Shepard documents establishing that Jackson was convicted in 1991 of two counts of selling or delivering cocaine within 1,000 feet

13

Stipulation of Facts expressly states: "The defendant acknowledges that by this stipulation … <u>he is further agreeing that the elements required to establish that he is factually guilty of the offenses charged in Counts One and Two of the Indictment pending before him are established</u>." <u>Id.</u> at 3 (emphasis added). During the bench trial, Jackson specifically told the Court that he had fully read the Stipulation of Facts and discussed it with his attorney. Bench Trial Tr. at 15-16. The Court directly asked Jackson whether he understood that, by proceeding to a bench trial based on the stipulated facts, he was effectively admitting his guilt as to Counts One and Two of the Indictment. <u>Id.</u> at 14-15. Jackson confirmed that such was his understanding. <u>Id.</u> Accordingly, the record refutes any suggestion that counsel failed to advise Jackson, or that Jackson did not understand, that he was incriminating himself by entering into the Stipulation of Facts.[9]

The record also refutes any claim that counsel gave ineffective assistance by not objecting that the stipulated facts violated Jackson's Fifth Amendment right against self-incrimination. The Fifth Amendment guarantees, among other things, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. A Fifth Amendment violation does not occur when, as here, the defendant knowingly, freely, and intelligently waives his right against self-incrimination. See <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966) ("The defendant may

---

of a school. (Civ. Doc. 6-7; State Court Judgment), (Civ. Doc. 26-1; Information) (Jackson does not allege that counsel should have challenged the nature or existence of the felony battery conviction). In any event, Jackson's knowing and voluntary acceptance of the Stipulation of Facts belies such a claim.

[9]    In any event, the incriminating effect of the Stipulation of Facts should have been obvious to Jackson by their very nature.

waive effectuation of [the right to remain silent], provided the waiver is made voluntarily, knowingly and intelligently."); cf. Grantling v. Balkcom, 632 F.2d 1261, 1264 (5th Cir. Unit B 1980) (a plea of guilty "is a waiver of at least three very important constitutional rights guaranteed criminal defendants. These are the right against self-incrimination, the right to confront one's accusers, and the right to trial by jury.") (citing Boykin v. Alabama, 395 U.S. 238, 243 (1969)).[10] During the bench trial, the Court reminded Jackson of his right not to testify, along with the other rights associated with a jury trial. Bench Trial Tr. at 6-8. Jackson assured the Court that he understood his rights but that he knowingly and voluntarily waived them. Id. at 8-10. When Jackson accepted the stipulated facts, he acknowledged that by doing so he was effectively admitting his guilt as to both counts of the Indictment. Id. at 14-16. Given Jackson's knowing and voluntary waiver of the right to remain silent, no Fifth Amendment violation occurred that would have warranted an objection.

Finally, the record refutes Jackson's suggestion that he did not consent to entering the Stipulation of Facts. The Stipulation of Facts bears his signature, and Jackson specifically acknowledged under oath in court that he signed the document. Stipulation of Facts at 3; Bench Trial Tr. at 7, 8, 16. Jackson also told the Court, under oath, that he had fully reviewed the Stipulation of Facts and discussed it with his

---

[10]    Decisions by a Unit B panel of the former Fifth Circuit Court of Appeals are considered binding precedent in the Eleventh Circuit Court of Appeals. Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir. 1982). While Jackson did not plead guilty, strictly speaking, he effectively did so by proceeding to a bench trial on the basis of stipulated facts that were sufficient to establish his guilt, as Jackson recognized during the bench trial. Bench Trial Tr. at 14-15.

attorney, that he voluntarily accepted the Stipulation, and that his decision was not based on any promises or threats. Bench Trial Tr. at 15-16.

Much like the sworn statements during a change-of-plea colloquy, the sworn representations of Jackson, his attorney, and the prosecutor during the bench trial, as well as the Court's findings in accepting the Jury Trial Waiver and Stipulation of Facts, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Such "[s]olemn declarations in open court carry a strong presumption of verity." Id. at 74. Because Jackson made statements under oath at the bench trial, "he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) (per curiam). To counter his directly inconsistent former testimony at the bench trial, Jackson has tendered only his own conclusory allegations and Affidavit. See Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014) (holding that a § 2255 movant's own uncorroborated affidavit that he pled guilty because he was threatened was not enough to overcome his sworn statements at the plea colloquy that his plea was voluntary and uncoerced). However, "[t]he district court is entitled to discredit a defendant's newly-minted story about being [coerced] when that story is supported only by the defendant's conclusory statements." Id. In light of Jackson's sworn statements during the bench trial and the uncorroborated nature of his current conclusory allegations, the Court rejects Jackson's claim that he did not knowingly and voluntarily agree to the Stipulation of Facts.

Moreover, there was an obvious strategic reason why Jackson proceeded to a bench trial based on stipulated facts. As noted at the sentencing hearing, Jackson desired to appeal the denial of his pretrial Motion to Suppress. Sentencing Tr. at 8. The stipulated-facts bench trial was a way for Jackson to effectively plead guilty (and thus potentially get credit at sentencing for acceptance of responsibility, which he did, see PSR at ¶ 26) while preserving his ability to appeal the denial of the Motion to Suppress.[11] Had Jackson simply pled guilty, he would have waived the right to raise the suppression issue on appeal. United States v. Charles, 757 F.3d 1222, 1227 n.4 (11th Cir. 2014) (defendant waived right to appeal the denial of a motion to suppress by pleading guilty) (citations omitted). Alternatively, had Jackson gone to trial and been convicted, he would have jeopardized his ability to get a Sentencing Guidelines reduction for acceptance of responsibility. Proceeding to a bench trial based on the Stipulation of Facts allowed Jackson to enjoy one of the sentencing benefits of pleading guilty while preserving his appellate rights.

The record therefore refutes Jackson's claim that counsel gave ineffective assistance regarding Jackson's decision to proceed to a bench trial based on stipulated

---

[11]     The Federal Rules of Criminal Procedure also allow a defendant to enter a conditional plea of guilty that preserves the defendant's right to appeal the denial of a specified pretrial motion. Fed. R. Crim. P. 11(a)(2). However,

> the United States Attorney's Office for the Middle District of Florida has a policy against conditional plea agreements. Therefore, a defendant in the Middle District of Florida, such as Petitioner, who might otherwise like to enter a conditional guilty plea that would preserve the right to appeal, must instead follow the procedure used in this case [a stipulated-facts bench trial] in order to preserve his appellate rights.

Lester v. United States, No. 3:13-cv-982-J-32JBT, 2014 WL 7274053, at *3 n.4 (M.D. Fla. Dec. 22, 2014) (citing the United States' brief).

facts. Jackson knowingly, voluntarily, and strategically admitted facts that established his guilt as to Counts One and Two of the Indictment so he could preserve his right to appeal the denial of the Motion to Suppress. As such, relief on the claim in Ground One is due to be denied.

### B. Ground Two

In Ground Two, Jackson argues that counsel gave ineffective assistance by failing to object and argue "that Movant's prior state drug conviction[s] for delivery [of cocaine within 1,000 feet of a school] did not qualify [as serious drug offenses] under the ACCA." § 2255 Motion at 5. Jackson "maintains that the mere delivery of cocaine in violation of Florida Statute § 893.13(1)(a) … was ambiguous" and therefore does not constitute a serious drug offense. Memorandum at 7. Jackson does not elaborate much more on why his prior drug convictions do not qualify as serious drug offenses, but he cites to United States v. Hernandez, 145 F.3d 1433 (11th Cir. 1998).

In Hernandez, the Eleventh Circuit held that a conviction under Florida Statute section 893.13(1)(a) (1993) did not categorically qualify as a controlled substance offense under U.S.S.G. § 4B1.2. Id. at 1139-40. The court explained that, at the time the defendant committed the offense, the statute encompassed the mere purchase of cocaine (which would not count as a controlled substance offense) as well the sale, delivery, manufacture, or possession with intent to sell, manufacture, or deliver cocaine (which would count as a controlled substance offense). See id. The court concluded that the district court had erred by relying on arrest affidavits to determine that Hernandez's conviction was for the sale of cocaine, because arrest affidavits do

not necessarily establish the offense for which the defendant was ultimately convicted. Id. at 1140. Thus, the court in Hernandez vacated the defendant's career offender sentence and remanded the case for resentencing. Id. at 1140-41. Importantly, however, the court stated that the district court could resolve the ambiguity of the defendant's prior conviction by "examining easily produced and evaluated court documents, such as any helpful plea agreements or plea transcripts, any presentencing reports adopted by the sentencing judges, and any findings made by the sentencing judges." Id. at 1140 (citing United States v. Spell, 44 F.3d 936, 939 (11th Cir. 1995)).

Given his reliance on Hernandez, Jackson appears to claim that counsel should have argued that his 1991 convictions on two counts of selling or delivering cocaine within 1,000 feet of a school were not serious drug offenses because, when Jackson committed the offenses, Florida Statute section 893.13(1)(e) encompassed the mere purchase of cocaine, and because Shepard documents purportedly did not clarify the basis of the convictions.

This claim fails because Jackson's 1991 convictions for the sale or delivery of cocaine within 1,000 feet of a school properly qualified as serious drug offenses under the ACCA. An offense under state law is a "serious drug offense" if it "involv[es] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))," and the offense is punishable by ten years or more in prison. 18 U.S.C. § 924(e)(2)(A)(ii). When Jackson committed the prior drug offenses, Florida law made

it "unlawful for any person to sell, purchase, manufacture, or deliver, or to possess with the intent to sell, purchase, manufacture, or deliver, a controlled substance in, on, or within 1,000 feet of the real property comprising a public or private elementary, middle, or secondary school." § 893.13(1)(e), Fla. Stat. (1991). The crime was a first-degree felony, punishable by up to 30 years in prison, if the controlled substance was cocaine. §§ 893.13(1)(e)(1), 893.03(2)(a)(4), 775.082(3)(b), Fla. Stat. (1991).

Similar to the facts in <u>Hernandez</u>, a violation of this statute does not categorically constitute a serious drug offense. This is so because the statute encompasses conduct that falls within the definition of a serious drug offense, that is the sale, manufacture, or delivery, or the possession with intent to sell, manufacture, or deliver cocaine, but also encompasses conduct that falls outside the definition of a "serious drug offense," the mere purchase of cocaine. Notably, in <u>Spaho v. United States Attorney General</u>, the Eleventh Circuit examined Florida Statute section 893.13(1)(a), which is the same as 893.13(1)(e) except that the latter imposes greater punishment for engaging in the same conduct near a school, and determined that the statute was divisible with respect to the conduct element. 837 F.3d 1172, 1177-78 (11th Cir. 2016). As such, the Eleventh Circuit held that a court could use the modified categorical approach and consult <u>Shepard</u> documents to identify what type of conduct formed the basis of the conviction. <u>Id.</u> While <u>Spaho</u> did not concern the pre-1994 version of section 893.13(1), the version that encompasses the purchase of a controlled substance, the Eleventh Circuit later applied <u>Spaho</u> to the pre-1994 version and

concluded that the statute is divisible. <u>United States v. Hart</u>, 743 F. App'x 919, 921-22 (11th Cir. 2018).

<u>Spaho</u> and <u>Hart</u> compel the conclusion that Jackson's 1991 convictions for violating Florida Statute section 893.13(1)(e) are subject to the modified categorical approach. A review of the available <u>Shepard</u> documents establishes that Jackson was convicted for the sale or delivery of cocaine – not the mere purchase of cocaine – and therefore that these convictions qualify as serious drug offenses. In July 1991, Jackson was charged in a Florida state court pursuant to a five-count Information. (Civ. Doc. 26-1; Information). Jackson was ultimately convicted of Counts One and Three of that Information. PSR at ¶ 36; (Civ. Doc. 6-7; State Court Judgment). In Count One of the Information the State of Florida charged that on June 20, 1991, Jackson "did … unlawfully sell or deliver to an undercover police officer a controlled substance, to wit: cocaine" within 1,000 feet of a school. Information at 1.[12] In Count Three the State charged that on June 21, 1991, Jackson again sold or delivered cocaine to an undercover officer within 1,000 feet of a school. <u>Id.</u> The State Court Judgment further reflects that Jackson was convicted of two counts of the sale or delivery of a controlled substance within 1,000 feet of a school, and that the offenses were both first degree felonies. State Court Judgment at 1. The Information and State Court Judgment thus establish that Jackson was convicted of two counts of selling or delivering cocaine, not merely purchasing it.[13] In turn, the sale or delivery of cocaine, in violation of Florida

---

[12]    The charging instrument and the judgment are <u>Shepard</u>-approved documents. <u>Shepard</u>, 544 U.S. at 16.

[13]    In his Reply, Jackson argues the United States may not now rely on <u>Shepard</u> documents because they were not presented at the sentencing hearing. Reply at 10. But

Statute section 893.13(1), qualifies as a serious drug offense under the ACCA. United States v. Smith, 775 F.3d 1262, 1268 (11th Cir. 2014).

Because Jackson's 1991 convictions for the sale or delivery of cocaine within 1,000 feet of a school properly qualified as serious drug offenses, counsel was not ineffective for not objecting to the ACCA enhancement on this basis. "A lawyer cannot be deficient for failing to raise a meritless claim." Freeman v. Att'y General, 536 F.3d 1225, 1233 (11th Cir. 2008) (citing Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001)).[14] As such, Jackson's claim of ineffective assistance in Ground Two is due to be denied.

## C. Second Motion to Supplement

Finally, in the Second Motion to Supplement and Proposed § 2255 Supplement, Jackson raises one "additional related issue, i.e.: that his two prior 'serious drug offenses' were a single offense, and should not have been counted separately as

---

Jackson ignores that the reason why the United States did not submit such documents at sentencing is that he did not contest the ACCA enhancement, so the United States had no reason to do so. Accordingly, the United States is not precluded from submitting Shepard documents in response to his current § 2255 claims. See Tribue v. United States, 929 F.3d 1326, 1332–34 (11th Cir. 2019) (government did not waive reliance on defendant's 2007 conviction for the sale or delivery of cocaine, although such conviction was not cited as an ACCA predicate in the PSR, where defendant did not object to the ACCA enhancement at sentencing; distinguishing United States v. Canty, 570 F.3d 1251 (11th Cir. 2009), and Bryant v. Warden, FCC Coleman-Medium, 738 F.3d 1253 (11th Cir. 2013), overruled on other grounds by McCarthan v. Director, Goodwill Indus. – Suncoast, Inc., 851 F.3d 1076 (11th Cir. 2017) (en banc), where defendants timely objected to the ACCA enhancement).

[14]     To the extent Jackson argues that counsel gave ineffective assistance by accepting the PSR's characterization of the 1991 sale-or-delivery convictions, without requiring the government to provide supporting Shepard documents at the time of sentencing, Jackson was not prejudiced under Strickland. Had Jackson objected to the ACCA enhancement and required the government to produce Shepard documents regarding the 1991 drug convictions, the government would have met its burden, as the Information and the State Court Judgment show.

predicate offenses for [the] ACCA enhancement, and that trial counsel was ineffective for not raising that challenge, at sentencing." Proposed § 2255 Supplement at 6. Jackson recognizes that according to the PSR, he committed one sale of cocaine on June 20, 1991, and he committed the second sale of cocaine on June 21, 1991. Proposed § 2255 Supplement at 10; see also PSR at ¶ 36. But, Jackson contends, "[t]here is absolutely nothing in the PSR to indicate where the information about the offense dates was obtained." Proposed § 2255 Supplement at 10 (emphasis in original). Jackson argues that counsel should have objected to the PSR and the ACCA enhancement, and required the government to come forward with Shepard documents to establish that the drug offenses were actually committed on different occasions. Jackson points out that the State Court Judgment (Civ. Doc. 6-7), which was the only Shepard document on file when Jackson filed the Proposed § 2255 Supplement, stated simply that Jackson had been convicted of two counts of selling or delivering cocaine within 1,000 feet of a school, but offered "no description of the offense conduct, nor any date(s) upon which the offense was committed." Proposed § 2255 Supplement at 8. Jackson contends:

> Without consideration of the PSR, the court would have been left to speculate whether the two counts occurred on consecutive days, or whether they resulted from transactions with two people at the same time. This is precisely the type of speculation Shepard, Taylor[15] and their progeny intended to prohibit, for the purposes of enhancement under the ACCA. Therefore, the failure to challenge the Court's consideration of the PSR as related to whether the counts of conviction occurred "on occasions different from one another" … constituted ineffective assistance of counsel.

---

15      Taylor v. United States, 495 U.S. 575 (1990).

Id. at 10-11 (citation omitted).

The United States concedes that the proposed claim relates back to the original § 2255 Motion, but contends that it lacks merit because Shepard documents establish that the prior drug offenses were committed on separate occasions. Response to Second Motion to Supplement at 5, 16-18. The United States attached to its response the charging document from the 1991 drug convictions. As reflected in the PSR and the State Court Judgment, Jackson was convicted of Counts One and Three of that Information. PSR at ¶ 36; State Court Judgment at 1. In Count One the state charged Jackson with selling or delivering cocaine to an undercover officer, within 1,000 feet of a school, on June 20, 1991. Information at 1. In Count Three it charged Jackson with selling or delivering cocaine to an undercover officer, within 1,000 feet of a school, on June 21, 1991. Id. Thus, the United States argues that the charging instrument establishes that the two offenses were committed on different occasions, such that counsel was not ineffective for not challenging whether the prior convictions counted as separate serious drug offenses.

The United States is correct. To qualify for the ACCA's enhanced mandatory minimum and maximum sentences, a defendant must have at least three prior convictions for a violent felony or a serious drug offense, or both, "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). "Although the predicate offenses must be distinct, even a small difference in time or place distinguishes convictions for purposes of the ACCA." United States v. Patterson, 423 F. App'x 921, 924 (11th Cir. 2011) (citing United States v. Sneed, 600 F.3d 1326, 1330 (11th Cir.

2010)). Indeed, "[d]istinctions in time and place are usually sufficient to separate criminal episodes from one another even when the gaps are small." United States v. Pope, 132 F.3d 684, 690 (11th Cir. 1998) (citations omitted).

> [T]he "successful" completion of one crime plus a subsequent conscious decision to commit another crime makes that second crime distinct from the first for the purposes of the ACCA. Accordingly, we hold that so long as predicate crimes are successive rather than simultaneous, they constitute separate criminal episodes for purposes of the ACCA. A showing that the crimes reflect distinct aggressions, especially if the defendant committed the crimes in different places, is particularly probative of the sequential nature of those crimes.

Id. at 692. "As long as some temporal 'break' exists between offenses, they will be deemed to have occurred on separate occasions." United States v. Holton, 571 F. App'x 794, 798 (11th Cir. 2014) (citing Pope, 132 F.3d at 689-90); see also Sneed, 600 F.3d at 1330 ("Two offenses are distinct if 'some temporal "break" occurs between [them].'") (quoting Pope, 132 F.3d at 690).

In determining whether prior ACCA offenses were committed on different occasions, a district court must consult only Shepard-approved documents. United States v. Longoria, 874 F.3d 1278, 1281 (11th Cir. 2017); United States v. Weeks, 711 F.3d 1255, 1259 (11th Cir. 2013) ("[W]e have explained that, for ACCA purposes, district courts may determine both the existence of prior convictions and the factual nature of those convictions, including whether they were committed on different occasions, so long as they limit themselves to Shepard-approved documents."), abrogated on other grounds by United States v. Esprit, 841 F.3d 1235, 1238-40 (11th Cir. 2016); Sneed, 600 F.3d at 1332-33 (holding that "sentencing courts may look to certain facts underlying [a] prior conviction" in making the "different occasions

inquiry," but must limit themselves to <u>Shepard</u>-approved sources). A charging instrument such as the Information filed in Jackson's state-court case is a <u>Shepard</u>-approved document. <u>Shepard</u>, 544 U.S. at 16; <u>United States v. Chitwood</u>, 676 F.3d 971, 976 (11th Cir. 2012).

Here, the charging document from the 1991 drug convictions establishes a clear temporal break between each of the offenses. Count One charged that Jackson sold or delivered cocaine to an undercover officer on June 20, 1991. Information at 1. Count Three charged that Jackson sold or delivered cocaine to an undercover officer the following day, June 21, 1991. <u>Id.</u> Thus, the Information reflects that Jackson completed one sale or delivery of cocaine and then made "a subsequent conscious decision to commit another crime," which "makes that second [sale or delivery] distinct from the first for the purposes of the ACCA." <u>Pope</u>, 132 F.3d at 692. Because the "predicate crimes [were] successive rather than simultaneous, they constitute separate criminal episodes for purposes of the ACCA." <u>Id.</u> Therefore, the Court properly counted each of Jackson's convictions for the sale or delivery of cocaine within 1,000 feet of a school as a separate serious drug offense.

The Court recognizes that the United States did not submit the charging document at the sentencing hearing (because Jackson did not object to the ACCA enhancement). The United States only submitted the charging instrument in response to Jackson's Second Motion to Supplement and Proposed § 2255 Supplement. However, the Information shows that even if counsel had objected to the PSR for counting Jackson's 1991 convictions as separate serious drug offenses, the United

States could have proven that the offenses were temporally distinct, and thus were committed on different occasions.[16] Accordingly, trial counsel's failure to object to the ACCA enhancement on this basis did not prejudice Jackson because there is not a reasonable probability the outcome would have been different. See Strickland, 466 U.S. at 694.

In light of the United States' concession that the supplemental claim relates back to the § 2255 Motion, Jackson's Second Motion to Supplement is due to be granted. However, for the reasons above, the supplemental claim is due to be denied on the merits.

### III. Certificate of Appealability

The undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Jackson "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

---

[16]     Notably, the narrative discussion of these convictions in paragraph 36 of the PSR establishes that they were committed on June 20, 1991, and June 21, 1991. PSR at ¶ 36.

Where a district court has rejected a petitioner's claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby **ORDERED:**

1. Petitioner Kenneth Jackson's Second Motion to Supplement (Civ. Doc. 24) is **GRANTED**.

2. Jackson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1), as supplemented (Civ. Doc. 24-1), is **DENIED**.

3. The Clerk is directed to enter judgment in favor of the United States and against Jackson, and close the file.

4. If Jackson appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be

filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 8th day of April, 2021.

MARCIA MORALES HOWARD
United States District Judge

lc 19

Copies:
Counsel of record
Petitioner